STATE *vs.* QUINTON MARCELLO.

MARCH 27, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an indictment for receiving stolen goods knowing them to have been stolen. The defendant was found guilty by a jury in the superior court. After the trial justice had denied the defendant's motion for a new trial he duly prosecuted his bill of exceptions to this court. The case is before us on several exceptions taken by him during the trial. We shall consider only those exceptions which he has specifically briefed or argued. All others are deemed to have been waived.

The state's case, as appears from the evidence in the record before us, was in substance that the defendant, who was in the radio repair business and who was having intimate relations with a certain married woman, induced her to obtain and turn over to him a large sum of money; that, as she was without funds herself, she stole the money, amounting to

$3000, from a neighbor who occupied a different tenement in the same house and who at times kept considerable money in his home, wherein she was accustomed to visit; that she told the defendant how she had come into possession of the money; that when the theft was later discovered, being afraid that her husband would find out not only that she had stolen the money but also that she had been intimate with the defendant, she asked the latter to give back the $3000; that he refused to comply with this request, either because he was unable or was unwilling to do so; and that in these circumstances she was forced to reveal the entire matter.

The evidence for the defendant amounted to a general denial of all accusations against him, and more specifically to a denial that he had received money from the married woman or that he knew that she had stolen money from anyone.

The first exception pressed by the defendant is the ninth. The question objected to by him in this instance is in the nature of a preliminary one requiring merely a yes or no answer. However, the point involved is substantially the same as that covered by the defendant's tenth exception and these two exceptions will therefore be considered together.

The tenth exception is to the refusal of the trial justice to grant defendant's motion to strike out all the testimony of the married woman relative to a statement which she had made at a police station in the presence of certain police officers and of the defendant, who was then in the custody of the police on the present charge. She testified that in the police station she had admitted everything which she had just testified to in the trial; and further that when she had made such admissions in the police station the defendant was present and made no answer to her statements.

The defendant contends that the above ruling was erroneous in that it was contrary to the law as set out in the opinion of this court in *State* v. *Epstein*, 25 R. I. 131. In that case the court, in substance, held that it was error to admit in evidence statements of a witness accusing one in the custody of

the police of committing a certain offense, such statements having been made in the presence of the accused, who remained silent. In such circumstances his silence cannot be used as sustaining the hypothesis of acquiescence in the truth of the statements.

The state, however, urges that apparently the defendant was not in the custody of the police when the witness made her statements in his presence, and cites *State v. Reitsma,* 68 R. I. 310, as supporting the ruling of the trial justice. An examination of the last-mentioned case shows clearly that it is distinguishable from the present case. In the *Reitsma* case the conversation in question was held in the presence of the defendant but in the absence of the police and about a week before his arrest. In our opinion the facts in the instant case do not support the state's contention that the defendant was not in police custody at the time the statement in question was made, but on that point more nearly resemble the facts in *State v. Epstein, supra.*

The state further argues that if the trial justice committed error, when he refused to grant the defendant's motion to strike out the controverted testimony, he later corrected that error in such a way that it became harmless; that the defendant did not suffer any prejudice therefrom; and that, under the circumstances, if the defendant believed that he had been prejudiced, he should have moved that the trial justice take the case from the jury and declare a mistrial.

It appears from the transcript that the testimony which the defendant had moved to strike out was given during the afternoon session of the court on October 1. It is evident that at some time thereafter the case of *State v. Epstein* came to the attention of the trial justice. At the beginning of the session on the morning of October 3, the defendant being on the witness stand, his direct examination having been completed but his cross-examination not having been started, the trial justice addressed the jury as follows: "There is a statement I would like to make at the present time. When Mrs. Ciccio was on the stand, I think on Monday, although

perhaps yesterday, she was interrogated by the Attorney General relative to certain statements which she claims she made at the police station in the presence of the defendant. Mr. McKiernan, representing the defendant, objected to her testifying about those statements and I overruled his objection. Since that time I have more carefully examined the law and I find I was in error and I want to correct that at this time. In order to refresh your recollection about what I am talking about I have already had the stenographer look up the testimony and I'll have her read the testimony I am referring to. Then I'll make the ruling."

The stenographer then read from her record several questions and answers comprising the testimony in question. At the proper points the trial justice sustained the defendant's objection to the question which was the basis of his ninth exception, and also granted his motion to strike out the disputed testimony, which motion was the subject matter of the tenth exception. The trial justice then made the following statement to the jury: "Anything he (the defendant) said is properly in the record. Anything anybody else said in his presence and he made no reply is improper and stricken from the record and you are directed to disregard all the testimony which has been stricken. I am making that ruling in conformance with 25 R. I. Page 136 where, in a similar situation, the Supreme Court said: 'That the silence of a party while under arrest when charges or accusations are made against him cannot be used as sustaining the hypothesis of acquiescence therein. It is clearly the right and privilege of a party in such circumstances to remain silent and the fact he does so ought not to be allowed to raise any inference against him.' That is the law, Mr. Foreman, Ladies and Gentlemen, that binds us, you and the Court. I'll say again by way of emphasis: You will disregard any testimony which was admitted the day before yesterday or yesterday, along the line which I have just referred to, as though it had never been testified to. Mr. McKiernan, is there anything else?"

In answer to this inquiry of the trial justice the defendant's attorney said: "I want to still persist in my exception and I want to say to the Court this: I do not know how much damage has been done by this testimony. I don't know how much it has prejudiced this jury and I do not know how we can eradicate that from the minds of the jury. There has been testimony here; it was obviously erroneous testimony and should not have been given. I don't know of anything I might say now, Your Honor please, that will eradicate from the minds of the jury any impression they might have." Following a further brief discussion and after the trial justice had again stated: "... what I have stricken you will entirely disregard just as completely as if it had never been said", the trial proceeded.

It is obvious that the ruling of the trial justice, in admitting in evidence and in refusing to strike out at the defendant's request the statement of the married woman made in the police station in his presence, he remaining silent, was erroneous as being contrary to the law set out in *State* v. *Epstein, supra.* But it is also evident that the trial justice did all in his power to bring to the jury's attention the fact that they must disregard the testimony which he had erroneously admitted and was striking from the record. The defendant complains that such testimony was again improperly brought to the jury's attention and emphasized by having the stenographer read it to them. We do not feel that this is a fair and reasonable inference to be drawn from what took place. It is clear that the trial justice had the testimony read so that there would be no uncertainty or speculation as to what testimony he was striking out and directing the jury to disregard. The reading was in the interest of clarity and definiteness and for the protection of the rights both of the state and of the defendant.

The question remains, however, whether or not, as the defendant contends, he was prejudiced in the minds of the jury by the original erroneous admission of the evidence in question and the trial justice's failure to strike it out at that time,

although he clearly and definitely did withdraw such evidence later from the jury's consideration. In order to reach a decision on this question we have carefully considered the evidence thus erroneously admitted, especially in its relation to and bearing upon all the other evidence in the case.

In our opinion the evidence against the defendant, independently of that erroneously admitted, was to the same effect and was so strong that there could be no reasonable foundation for the supposition that the jury was prejudiced and improperly influenced by such last-mentioned evidence in reaching their verdict. See *State* v. *Towler,* 13 R. I. 661, 666. The trial justice evidently viewed the evidence in the same light when he stated in his rescript that the state "presented potent and convincing evidence" of a character and weight sufficient to prove the defendant guilty beyond a reasonable doubt. On the other hand, in making his defense the defendant relied merely on his own testimony. He was corroborated by other witnesses only on two unimportant issues. We find therefore that, on the record before us, the defendant was not prejudiced by the erroneous ruling of the trial justice in originally refusing to strike out the evidence in question. The defendant's ninth and tenth exceptions are overruled.

We have examined the question and answer covered by the defendant's twelfth exception. We find nothing in the ruling of the court which was erroneous or prejudicial to the defendant and that exception is overruled.

The defendant's remaining exceptions, namely, his sixteenth to twenty-first, inclusive, and his thirty-eighth, may be considered together. The defendant, while being cross-examined regarding his means of livelihood, testified in substance that after his arrest he withdrew about $2000 which he had in a savings account in a bank and this amount, together with about $800, which he had in cash, he kept in his room; and then, over objection, he testified that he paid out $2500 of this sum for lawyers' fees. The defendant's attorney then moved that the court declare a mistrial on the ground

that such testimony was prejudicial to the defendant's rights. After argument the trial justice denied the motion and the defendant excepted. Thereafter the above testimony was in part repeated, over the defendant's objection, and he renewed his motion for a mistrial, which motion was again denied. The defendant saved several exceptions to these rulings. Later, in response to a question in cross-examination, the witness made a reference to a payment, from the bank account in question, of $300 for lawyers' expenses. The defendant again moved that a mistrial be declared and the trial justice denied the motion, to which decision the defendant excepted.

Upon consideration we are of the opinion that the trial justice did not commit error in making the above rulings. In our opinion the evidence was material and relevant. The defendant was charged with receiving a certain sum of money knowing it to have been stolen. He had denied receiving any money. The state was merely seeking to show the defendant's financial condition, at and following the time of the offense with which he was charged, in order to have the jury draw certain desired inferences from the chain of circumstances brought out by the evidence. The evidence was relevant. The weight and credibility thereof were for the jury to determine.

In response to questions in cross-examination the defendant had testified to making only a small amount of money from his business at or about the time in question. He had also admitted that he withdrew the funds in the savings account above referred to. In order to ascertain whether or not he had used this amount or these funds for living expenses, the state's attorney had a right to ask the defendant: "What happened to the $2500 or so?" It was in response to that question that he had voluntarily stated that it was used for lawyers' fees, no particular lawyer being designated and no particular answer like that apparently being expected or sought. The defendant was not asked specifically what he had paid to his trial attorneys. We see nothing improper in

this course of inquiry or in the answers elicited. In our opinion the defendant was not prejudiced by the result of this examination. We therefore find no merit in the pertinent exceptions under consideration and they are overruled. ,

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further procedings.

*John H. Nolan,* Attorney General, *Raymond F. Henderson,* Special Counsel, for State.

*Peter W. McKiernan, Edward C. Drinkwater,* for defendant.