276 A.2d 274.

STATE *vs.* CARLTON GETER.

APRIL 21, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. The defendant was tried and convicted before a judge and jury in the Superior Court on an indictment

charging him with robbery. He now urges exceptions to two evidentiary rulings.

The only evidence in the case relating to the elements of the offense charged came from a clerk employed and in attendance at the Sterling Spa in Providence on the afternoon of July 8, 1969. Her testimony was that defendant entered the Spa premises at about 4:45 o'clock that afternoon. He was armed with a two-foot pipe, and she became concerned for her own safety. After some conversation not here pertinent, he pushed by her as he went behind the counter where the cash register was located. After appropriating substantially all of the money in the register, he left the premises. He was apprehended not long thereafter and these proceedings followed.

The only other witness was the arresting officer, a detective in the Providence Police Department. He was called by the state and his testimony, although brief, is the source of defendant's principal exception. After identifying himself, the witness said that he had been assigned to investigate the Sterling Spa theft and then the following exchange took place.

"Q: As a result of your conversation with her [the clerk] what did you do?
"A: We began a search for Carlton Geter.
"Q: Did you locate him?
"A: The following day about 1:30 in the afternoon we located Carlton Geter in a house at 104 Somerset Street.
"Q: At that time did you take him into custody?
"A: We apprehended him, advised him of his rights; then after further investigation he was charged with robbery.
"Q: You didn't question him?
"A: With the rights form that we had, he refused to sign it. At this point he didn't want to say anything, so we didn't bother talking with him.

"Q: You took him back to the station?
"A: Yes sir.
"Q: At that time he was charged?
"A: Yes sir.
"Q: No further questions.
　　"Mr. Kelley:　Your Honor, I don't see any evidence this witness has to offer. I move it be stricken.
　　"Mr. Archetto:　I think it is beneficial to show that the defendant was apprehended.
　　"The Court:　The motion to strike the testimony is denied.
　　"Mr. Kelley:　Note my exception, Your Honor.
　　"The Court:　Yes.
　　"Mr. Kelley:　No questions Your Honor.
　　"(Defendant's Exception Noted)."

In his brief defendant argues that the arresting officer's testimony should have been stricken because of the rule which says that the failure of one under arrest to respond to a charge or an accusation that he committed a crime will not sustain an inference that by standing mute and not responding he acquiesced in the truth of the accusation. *State* v. *Marcello*, 72 R. I. 382, 51 A.2d 828; *State* v. *Epstein*, 25 R. I. 131, 55 A. 204. While it became apparent during oral argument that this rule was inapposite to the facts in this case, it also became obvious from the arresting officer's testimony that defendant did not refuse to respond to that officer's inquiries until after he had been advised of his "rights" and had refused to sign a "rights form". The question then becomes whether to allow the jury to receive this information was objectionable under the principles enunciated in *Griffin* v. *California*, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106.

In *Griffin* the accused did not testify, and the Supreme Court held that the fifth amendment, as made obligatory upon the states by the fourteenth amendment, outlawed

either adverse comment by the prosecution on that silence or instructions by the court that it was evidence of guilt. Its rationale was that to allow such comments or instructions would impose a penalty upon an accused "for exercising a constitutional privilege" and would cut "down on the privilege by making its assertion costly." *Id.* at 614, 85 S. Ct. at 1232-33, 14 L. Ed.2d at 109-10. Although unarticulated, it may well be that the Court, in substance, recognized that to permit the jury to learn that an accused had taken advantage of his right to remain silent might lead to an inference of guilt by the jury because "* * * most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." *Walker* v. *United States,* 404 F.2d 900, 903 (5th Cir. 1968).

In this case, to be sure, the jury was not told in so many words that defendant was exercising a constitutional privilege, but it is not open to serious question that the jurors, or at least some of them, gained that impression from the arresting officer's testimony that defendant, upon apprehension and after being advised of his "rights," refused to sign the "rights form" and said that "he didn't want to say anything." On principle we can see no difference between what transpired here and a *Griffin* situation. In each case the accused asserted, although in differing contexts, his constitutional right not to be a witness against himself, and in each the jury was made aware that this right had been exercised. The final result should not hinge on whether the advice came from the prosecutor in his closing argument as in *Griffin* or from a prosecution witness during the trial. Consistency as well as logic dictate that if one is constitutionally impermissible, the other should be. This was decided in *Baker* v. *United States,* 357 F.2d 11 (5th Cir. 1966). There an FBI agent testified that the accused, when first questioned, indicated that he wanted a lawyer and thereafter made no further statement.

In holding that the admission of that testimony was erroneous the Court said:

"In asking for counsel before making any statement, appellant was exercising a Constitutional right which the Supreme Court has time and again declared to be guaranteed to all persons accused of crime. To have proven that appellant requested the right of counsel and thereafter made no further statement was, we feel, as objectionable as it would have been to comment on a defendant exercising his Constitutional right not to take the witness stand." *Id.* at 13-14.

To the same effect is *United States* v. *Arnold,* 425 F.2d 204 (10th Cir. 1970) where the Court said at 206 that the testimony that defendant said nothing after being given the *Miranda* warnings "* * * served no probative purpose and did no more than turn on the red light of potential prejudice involving the defendant's fifth amendment rights." *Accord, United States* v. *Kroslack,* 426 F.2d 1129 (7th Cir. 1970).

While the advice given by the arresting officer in this case may not have been as pointed as that given in *Baker* or in *Arnold,* the challenged testimony had the effect here, as it did in those cases, of informing the jury that defendant prior to an in-custody interrogation asserted his constitutional right to remain silent. The cases cited say that to admit such testimony was error and we agree.

Having determined that the error was of constitutional proportions, we are next confronted with the question of whether to apply the automatic reversal standard or the harmless error doctrine. No guidelines exist for determining into which classification what constitutional errors fall except to the extent that "* * * prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error * * *." *Chapman* v. *California,* 386 U. S. 18 at 23, 87 S. Ct. 824 at 827-28, 17 L. Ed.2d 705 at 710.

While no prior case classifies the specific error we have before us, the *Chapman* case decides that the right of an accused to a trial free of comment as to his failure to testify is not so basic to a fair trial that an infraction demands an automatic reversal of his conviction. Just as we analogized from *Griffin* v. *California, supra,* to find a constitutional infraction in this case, so do we now borrow from *Chapman* v. *California, supra,* and by a parity of reasoning, find that the harmless error doctrine applies where the jury has been advised, not by a prosecutor or by a trial justice as in *Chapman,* but from the witness stand that a defendant has asserted his constitutional right to remain silent.

What remains now is to decide whether the error here was harmless. For us to reach that decision we must be satisfied by proof "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," *Chapman* v. *California, supra,* at 24, 87 S. Ct. at 828, 17 L. Ed.2d at 710; *Fahy* v. *Connecticut,* 375 U. S. 85, 86-87, 84 S. Ct. 229, 230, 11 L. Ed.2d 171, 173, and we will be satisfied if the record discloses that the untainted evidence provides overwhelming support for the conviction. *Harrington* v. *California,* 395 U. S. 250, 254, 89 S. Ct. 1726, 1728, 23 L. Ed.2d 284, 287.

Here the only evidence in the case on the question of defendant's guilt or innocence is uncontradicted and unimpeached. It came from the person robbed, and it contains no inherent improbabilities or contradictions which alone or with other circumstances in evidence affect its weight or credibility. It provides overwhelming support for the conviction, and satisfies us that the arresting officer's testimony that defendant after being advised of his rights said nothing "was harmless beyond a reasonable doubt."

The defendant also calls our attention to the testimony of the complaining witness who, in the course of identifying defendant as the person who allegedly robbed her, without solicitation from the prosecution, volunteered the testimony that she had "seen him in three or four courtrooms." Counsel for defendant thereupon immediately notified the court that he had a motion to make and, at a bench conference, moved that the case be taken from the jury and passed. The court reserved decision, instructed the jury to disregard the comment, and then at the close of all of the evidence denied the motion. Even assuming that the introduction of this extraneous matter into the case was prejudicial, it was cured by the trial justice's initial cautionary instruction as well as in his charge to the jury when he instructed the jurors to disregard any reference made by the witness to having seen defendant in other courtrooms. Moreover, even if both cautionary instructions had not been given, it cannot reasonably be said that the evidence complained of would have had the effect of so prejudicing the minds of the jurors as to prevent them from reaching a fair and impartial verdict.

The defendant's exceptions are overruled, and the case is remitted to the Superior Court.

Motion to reargue denied.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, *Scott K. Keefer*, Special Asst. Attorney General, for plaintiff.

*James Cardono*, Public Defender, *Paul E. Kelley*, Asst. Public Defender, for defendant.