STATE

v.

**Robert C. CIANCI.**

**No. 79–488–C.A.**

Supreme Court of Rhode Island.

June 4, 1981.

Dennis J. Roberts II, Atty. Gen., Maureen E. McKenna, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is a criminal indictment charging the defendant, Robert C. Cianci (Cianci), with

assault with a dangerous weapon[1] and possession of a weapon without a license.[2] A Superior Court jury acquitted Cianci of the assault charge but returned a guilty verdict on the charge of possession of a weapon without a license. The defendant is now before us on an appeal from the judgment of conviction entered on that charge. We find no merit in the issues raised by the defendant and affirm the conviction below.

The details of the incident giving rise to the charges against defendant are somewhat in dispute. At defendant's trial, Officer John Sivo (Sivo), a member of the Cranston police department, testified that while on duty on the evening of July 4, 1972, at approximately 11 p.m., he received a radio call requesting him to investigate a complaint by defendant that fireworks were being thrown at his house, located at 140 Madison Avenue in that city.

The radio dispatcher told Sivo that defendant did not wish to have the officer actually come to his house because he was entertaining some guests there at the time. Upon arriving at Madison Avenue, Sivo drove his police cruiser down the street past defendant's house but did not observe any unusual activity there. Farther down the street, the officer conferred with a group of youths sitting on the back of a parked car; the youngsters advised him that the firework activity had indeed been taking place on the upper portion of the street near defendant's home.

Sivo then backed the cruiser up the street to a location in front of defendant's house, whereupon he met Ernest DiRocco, who was, at the time, visiting with defendant's neighbors directly across the street from defendant's house. Sivo was an acquaintance of DiRocco, both having previously attended Rhode Island Junior College. When Sivo asked DiRocco "what the problem was," DiRocco said, "Well, Mr. Cianci is coming out of the house. He'll explain the situation to you." Sivo turned and observed defendant and his wife as they came out of the house and walked down the

driveway toward him. Sivo described defendant as being in an "enraged state." At this point, Sivo got out of the cruiser and stood on the sidewalk next to the car. The officer testified that as defendant approached him, defendant said, "If you can't handle it, I will. I have a loaded gun and I'll blow everybody's head off." With that, defendant reached into the rear pocket of his pants and pulled out a .38 caliber revolver. He first began waving it in the officer's face and then pointed it in the direction of DiRocco, who was standing on the sidewalk approximately three feet away from him. With the barrel of the pistol only three or four inches from his face, the officer was able to see that there were bullets in the gun's chambers. The officer testified that defendant would alternately wave the gun in front of the officer's face and then would motion with the gun to the neighbors located across the street or at his own house.

Sivo testified that he talked to defendant in an attempt to calm him down. He said that when defendant started to put the gun in the rear pocket of his pants, Sivo grabbed defendant by the arm and disarmed him. The officer placed him in the police cruiser and transported him to police headquarters.

At trial, defendant's recollection of the events occurring on the evening of July 4 differed substantially from that of the prosecution's witnesses. His version of the encounter with Officer Sivo was essentially corroborated by several witnesses who testified in his behalf. For the purposes of this appeal, however, it is not necessary for us to describe all of the occurrences in and around defendant's home on that evening. Suffice it to say that defendant had very acrimonious relationships with the neighbors next to and across the street from him. The defendant testified at trial that previously on several occasions he had complained to the Cranston police about being harassed by his neighbors but had not got-

1. In violation of G.L. 1956 (1969 Reenactment) § 11–5–2.

2. In violation of G.L. 1956 (1969 Reenactment) § 11–47–8.

ten any satisfactory resolution of the problem.

The defendant testified further that on the evening in question, his neighbors across the street not only had been throwing firecrackers at his house and at vehicles parked on his property, but also had been shouting profanities at the guests in his home, prompting him to request the assistance of the Cranston police department. In the interval between his call to police headquarters and the arrival of the police officer, defendant went out into his backyard to investigate a noise. While outside, he testified, he was shot in the hand by a missile from a pellet gun fired by someone behind a fence in the next yard. The defendant said he went inside and administered first aid to himself and then went into his bedroom, got a gun, and placed it in the rear pocket of his pants.

Very shortly thereafter one of defendant's guests told him that a police officer had arrived outside. The defendant went outside and was walking down his driveway toward the street when he remembered that he had the gun in his pocket. Not wanting to leave the gun concealed, he took the gun out of his pocket and continued walking toward the officer with it in his hand. The defendant testified that as he continued to approach Officer Sivo he told the officer that he needed some assistance because it was "going to come to the point that [he was] going to end up getting [his own] head blown off." The defendant said that at this time he was standing a short distance from the officer. He said that he did not point the gun at the officer but used the hand in which he was holding the gun to gesture while he was talking to him.

The defendant testified that he noticed that Sivo was staring at the weapon in defendant's hand. The defendant then told the officer, "I can see that this weapon is bothering you. If it will make you feel any better, I'll put it in my back pocket and let you take it." Cianci said he replaced the weapon in the rear pocket of his pants and told the officer that he could remove it. When defendant turned away from the officer, he testified that he was attacked from behind by him and placed under arrest.

We note here that defendant admitted during the course of his testimony that he was in possession of the weapon while on the sidewalk outside his home, that the weapon was loaded, and that he did not have a Rhode Island license to possess the weapon.

A Providence County grand jury subsequently returned an indictment against defendant, charging him with assault with a dangerous weapon and with possession of a weapon without a license. As we indicated earlier, defendant was tried before a justice of the Superior Court sitting with a jury. The jury acquitted defendant on the assault charge but returned a guilty verdict on the charge of possession of a weapon without a license.

On appeal to this court, defendant raises several claims of error. To the extent necessary, the additional facts pertinent to this appeal will be discussed as they relate to the errors claimed by defendant.

## I

At trial, following Officer Sivo's direct examination by the prosecutor, defendant moved pursuant to Rule 26.1 of the Superior Court Rules of Criminal Procedure [3] for

---

**3.** The portions of Rule 26.1 of the Superior Court Rules of Criminal Procedure pertinent to our discussion here provide:

"(a) Production of Statements. If there shall not have been pre-trial discovery pursuant to Rule 16, after a witness called by the State has testified on direct examination, the court shall, on motion of the defendant, order the attorney for the State to produce any statement (as defined in subdivision (e)) of the witness in the possession of the attorney

for the State, or under his control, which relates to the subject matter as to which the witness has testified.
" * * *
"(e) Statement Defined. The term 'statement,' as used in subdivisions (a), (b) and (c) of this rule, means—(1) a written statement made by a prosecution witness and signed or otherwise adopted or approved by him; or
"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof,

production of any written statements made by the officer regarding the incident and for production of the officer's testimony before the grand jury. The state produced a police report made by Sivo on the incident in question but resisted defendant's motion for production of the officer's testimony before the grand jury. The defendant argued that under Rule 26.1(a) he was entitled to the production of *any* statement made by the witness concerning the incident in question. He asserted that since subsection (e) of Rule 26.1 defines "statement" as a written statement made and signed by a prosecution witness or "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness," he was entitled to either the officer's written statement or a record of his grand jury testimony or both.

After ascertaining that defendant had not sought discovery from the state pursuant to Super. R. Crim. P. 16, the trial justice ruled that under Rule 26.1 the state could elect to produce either the written statement or the grand jury testimony. He ruled that the state had complied with the requirements of Rule 26.1 when, after Sivo's testimony, they produced the police report prepared by him on the incident; therefore, he denied defendant's motion for production of the grand jury testimony. We affirm the trial justice's denial of the motion but do so for a reason other than the one given by the trial justice.

The record in this case indicates that defendant did not seek pretrial discovery pursuant to Rule 16(a). If defendant had chosen to do so, he would have been entitled to obtain the grand jury testimony of Officer Sivo, pursuant to that rule which, in pertinent part, provides:

"(a) Discovery by Defendant. Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State:

" * * *

"(7) as to those persons whom the State expects to call as witnesses at the trial, all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial."

In those instances in which a defendant has for some reason chosen not to take advantage of the pretrial discovery procedure, he or she at the time of trial may still obtain statements made by the prosecution witnesses by way of motion pursuant to Rule 26.1. That rule provides that after a witness called by the prosecution has testified on direct examination, a defendant may obtain any witness's statement in the possession of the attorney for the state, or under his control, which relates to the subject matter to which the witness testified.

The defendant argues that under the definition of "statement" in Rule 26.1(e) he was entitled to the written statement of the police officer and/or the grand jury testimony of that witness. That rule, however, defines "statement" as:

"(1) a written statement made by a prosecution witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a prosecution witness to an agent of the State and recorded contemporaneously with the making of such oral statement."

■ A witness's testimony before the grand jury cannot be considered a "state-

which is a substantially verbatim recital of an oral statement made by a prosecution witness to an agent of the State and recorded

contemporaneously with the making of such oral statement."

ment * * * made to an agent of the [s]tate," for it is clear that a grand jury is not an agent of the state, but is rather an appendage of the court. *See In re Buxton*, 111 R.I. 480, 482, 304 A.2d 350, 352 (1973); *State v. Edwards*, 89 R.I. 378, 385, 153 A.2d 153, 158 (1959). Thus, the only reasonable interpretation that can be given to subdivision (e)(2) of Rule 26.1 is that it contemplates situations in which the prosecution's witness has made an oral statement to a prosecutor or a law enforcement official, the only record of which is a stenographic or some type of electronic recording.

■ In our view, Rule 26.1 allows a defendant to obtain at trial any statement of a prosecution witness made to an agent of the state; however, the rule cannot be interpreted to provide that the defendant may also obtain the recorded testimony of that witness before the grand jury. To hold otherwise would allow a defendant to obtain at trial under Rule 26.1 the grand jury testimony of a witness which he had available to him during the pretrial discovery process. Such a holding would completely emasculate the reciprocal-discovery requirements of Rule 16. Rule 26.1 was never intended to be a replacement for discovery under Rule 16. Thus, defendant's motion pursuant to Rule 26.1 to require the state to produce the record of Officer Sivo's testimony before the grand jury was properly denied.

## II

The next two issues raised by defendant concern evidentiary rulings made by the trial justice during the course of the trial. Initially, defendant contends that the trial justice erred on two occasions by prohibiting defendant's counsel from impeaching the testimony of Officer Sivo by the use of prior inconsistent statements made by him. The first instance to which defendant refers us involves Officer Sivo's testimony during direct examination that at the time of the alleged incident defendant had said to him

that "if the police could not take care of the matter up here, I'll take things into my own hands and blow someone's head off."[4] During the course of cross-examination, defendant attempted to impeach Sivo's testimony through the use of the officer's testimony at a prior hearing at which the officer had stated that at the time of the incident defendant had said that "if the police can't take care of the matter up here, I'll take things into my own hands." The trial justice prohibited defendant from pursuing this attempt at impeachment, noting that the statements were not inconsistent because there was no indication that Officer Sivo's prior testimony included all of what defendant said at the time of the alleged incident.

The second instance to which defendant refers us involves Sivo's testimony during cross-examination that he admitted to being extremely fearful and nervous during the encounter with defendant but denied that he had said on any occasion that he was nervous because defendant "had the drop on [him]." The defendant again attempted to introduce evidence of the officer's testimony at the prior hearing in the case to show that Sivo had used those words. The trial justice ruled that the issue was collateral to the confrontation between defendant and the officer and refused to allow impeachment of the officer with his prior inconsistent statement.

■ It is a well-settled principle in this jurisdiction that the permissible scope and extent of cross-examination is a matter primarily within the sound judicial discretion of the trial justice and that a ruling by the trial justice thereon will not be disturbed by this court on appeal except for a clear abuse of discretion. *State v. Benevides*, R.I., 420 A.2d 65, 69 (1980); *State v. Bennett*, R.I., 405 A.2d 1181, 1183 (1979); *State v. Mattatall*, 114 R.I. 568, 572, 337 A.2d 229, 232 (1975).

---

4. As we previously indicated, Officer Sivo actually testified on direct examination that defendant had said, "If you can't handle it, I will. I have a loaded gun and I'll blow everybody's head off."

A basic purpose of cross-examination is to impeach the credibility of an adversary witness, and a trial justice may within his sound judicial discretion permit interrogation designed to accomplish that purpose. *State v. Anthony*, R.I., 422 A.2d 921, 924 (1980); *State v. Eckhart*, 117 R.I. 431, 435, 367 A.2d 1073, 1075 (1977); *State v. Ragonesi*, 112 R.I. 340, 346, 309 A.2d 851, 854 (1973); *Bedrosian v. O'Keefe*, 100 R.I. 331, 334, 215 A.2d 423, 425 (1965). A witness's testimony at trial may be impeached by the admission of prior statements made by the witness which are inconsistent with his trial testimony. *State v. LaPlume*, R.I., 375 A.2d 938, 942 (1977); *State v. Vaccaro*, 111 R.I. 59, 64, 298 A.2d 788, 791 (1973).

These statements can be introduced into evidence only after a proper foundation has been made. The witness's attention first must be directed to the nature of the supposed statements and the circumstances under which they were made. *State v. Earley*, R.I., 373 A.2d 162, 166 (1977); *State v. Vaccaro*, 111 R.I. at 64–65, 298 A.2d at 791.

When a party seeks to introduce a prior inconsistent statement, the trial justice in the first instance must determine whether the statement is in fact inconsistent with the witness's testimony, *Dixon v. Royal Cab, Inc.*, R.I., 396 A.2d 930, 933 (1979) (citing *United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99, 104 (1975)); *Morgan v. Washington Trust Co.*, 105 R.I. 13, 23, 249 A.2d 48, 54 (1969), and whether the inconsistency is in any way material to the issues involved in the case. *See* Rule 26.1(c) of the Superior Court Rules of Criminal Procedure.[5] Whether the proper foundation has been laid is a question directed to the trial justice's sound discretion. *State v. Earley*, R.I., 373 A.2d at 166.

Both instances cited to us by defendant involve questions concerning the scope of permissible impeachment on cross-examination. When viewing the trial justice's ruling thereon, we cannot say that he clearly abused his discretion, and therefore, we shall not disturb those rulings on appeal.

III

The third argument raised by defendant is that the trial justice erred in refusing to allow defendant's counsel to inquire into Officer Sivo's bias in favor of Ernest DiRocco. Specifically, the record indicates that during defendant's cross-examination of Sivo, defendant attempted to show that the inconsistencies between Sivo's trial testimony and the police report he prepared were the result of his bias toward DiRocco, who defendant testified was acquainted with Sivo prior to the time of the incident.

In his offer of proof to the trial justice, defendant argued that Sivo was an acquaintance of DiRocco, that he was attempting to show that Sivo was aware of the ill feelings between DiRocco and defendant, and that Sivo's testimony at trial was, therefore, biased in favor of DiRocco over defendant. The trial justice, ruling that the relationship between DiRocco and defendant was so remote that it was irrelevant to show bias on the part of Sivo, sustained the prosecutor's objections to the line of inquiry.

Certainly, questions during cross-examination attempting to show possible bias or prejudice of a witness toward one of the parties or to show a personal interest in the outcome of the case which can be expected to color his testimony and undermine its reliability is a proper subject of inquiry. *State v. Eckhart*, 117 R.I. at 435, 367 A.2d at 1075; *Woodward v. Wilbur*, 54 R.I. 60, 63, 169 A. 486, 488 (1933). Although we have said that reasonable latitude must be given to a party during cross-examination, the scope of the examination in reference to a proper subject of inquiry remains subject to the control of the trial court's sound

---

5. Rule 26.1(c) of Super. R. Crim. P. provides: "A statement [made by a prosecution witness] may be used at the trial only to impeach the credibility of a witness by demonstrating a material variance between the testimony of the witness and his prior statement."

*ate v. Eckhart*, 117 R.I. at 'd at 1075. Here the trial *it* defendant's attempt to part of Officer Sivo was remote to have any probative value. We find no abuse of the trial justice's discretion in his so ruling.

## IV

The defendant contends next that the trial justice erred in admitting testimony by Officer Sivo that following defendant's arrest, defendant had been advised of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that he had invoked his right to remain silent. An examination of the record indicates that after defendant rested, the state recalled Officer Sivo to the stand in rebuttal. During the course of direct examination by the prosecutor, the following testimony was elicited:

"Q  Now, officer, directing your attention to what transpired at the police station on July 4, 1972, after this incident, you testified earlier that— on cross-examination, that you had no conversation with Mr. Cianci at the police station that night, is that correct?

"A  Yes, it is.

"Q  Did you say anything to Mr. Cianci while you were at the police station?

"A  Nothing other than giving him his rights.

"Q  And did he say anything to you?

"MR. CICILLINE: Objection.

"THE COURT: Could I see you at the bench, please?"

At the bench conference, defendant requested the trial justice to take the case from the jury and to pass the case, arguing that the jury was not entitled to know that defendant had been advised of his constitutional rights if no incriminating statement had been made by defendant, because of the adverse inference the jurors might draw from the fact that defendant had invoked his constitutional right to remain silent. The trial justice denied defendant's

motion, and the witness's testimony continued.

"THE COURT: Read the pending question, please? [The stenographer read the previous question.]

"THE COURT: All right.

"THE WITNESS: Not immediately after I did give him his rights. The witnesses came in. I then escorted the witnesses to the detective's room for statements and left the defendant with the lieutenant and Officer Comella. I returned back there several minutes later and Officer Comella had left and I was in the room with Mr. Cianci. He then was still very angry at the whole problem and he stated to me that if I didn't have the charges dropped he was going to have me in court on a suit. He was still quite angry, like I stated, and continued to say that he had recordings of another officer—

"MR. CICILLINE: Objection.

"THE COURT: Sustained."

Before us defendant asserts that such inquiry by the prosecutor was impermissible and that the trial justice should have granted defendant's motion to pass the case. In support of his contention, defendant relies principally upon *State v. Geter*, 108 R.I. 437, 276 A.2d 274 (1971). In *Geter* we followed the principles enunciated by the Supreme Court in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, *reh. denied*, 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965), and said that it was constitutionally impermissible to inform the jury that a defendant had invoked his right to remain silent. *Id.* 108 R.I. at 441, 276 A.2d at 276.

Under the facts of this case, however, *State v. Geter* is of no assistance to defendant. Our careful reading of the record in this matter fails to disclose any testimony given by Officer Sivo or any comment made by the prosecutor that following his arrest, defendant had invoked his constitutional right to remain silent. Thus, the principle we enunciated in *Geter* is clearly inapposite to the facts of the instant case.

Moreover, we find no substantial prejudice accruing to defendant from Officer Sivo's testimony, in the presence of the

jury, that he advised defendant of his so-called *Miranda* rights in view of the fact that defendant had previously given similar testimony, without objection by defense counsel, during cross-examination by the prosecutor.

## V

The thrust of defendant's final contention is difficult to perceive. The defendant states that under G.L. 1956 (1969 Reenactment) § 11–47–8 [6] it is lawful for a person, without a license, to possess a pistol in one's dwelling house or on land possessed by him. The possession of a pistol without having a license, defendant continues, only becomes unlawful when the possession is at some other place. The defendant argues that when he, in possession of the pistol, passed from his property to the sidewalk to talk to the police officer, he did so without criminal intent. Since there was neither a conscious doing of the act nor any willful intent by defendant to violate the law, defendant asserts that he cannot be charged with the violation of the statute.

The defendant's argument, as we understand it, in essence is a challenge to the trial justice's instruction to the jury on the elements of the crime of possession of a weapon without a license. The trial justice in this portion of this charge stated:

"The State has met [its] burden of proof if it has satisfied you by proof beyond a reasonable doubt that the defendant intentionally, as I have defined intentionally for you before—if the State proves that the defendant intentionally carried a

[pistol] or [revolver] into Madison Avenue on the night of July 4, 1972, in this context the State does not have to prove that the defendant intended to violate the law, only that he intended to carry the gun into the street and that he did carry the gun into the street. If you are satisfied that the State has proved this charge beyond a reasonable doubt, it is your duty to return a verdict of guilty on count two. Conversely, if you are not satisfied that the State has proved beyond a reasonable doubt that Mr. Cianci intentionally carried a pistol into Madison Avenue on that occasion, it is your duty to return a verdict of not guilty."

Earlier in his charge, the trial justice had defined "intent" as

"the purpose, resolve, determination with which a person acts. Intent, being subjective and a product of the mind, may be inferred from the conduct and actions of a person and from other circumstances surrounding his conduct which reflects its purpose. Said another way, a person may be presumed to intend the natural and logical [consequences] of his actions."

Following the trial justice's instructions to the jury, defendant's counsel took exception to the latter portion of the charge by stating, "I [except] to that portion of Your Honor's charge in which you did not more clearly [define] the intention necessary to commit the crime in count two."

We are unable to reach the merits of defendant's contentions. In this regard we point out that the provisions of Rule 30 of Super. R. Crim. P.[7] are clear and concise.

---

**6.** At all times pertinent to this appeal G.L. 1956 (1969 Reenactment) § 11–47–8 provided:

"No person shall, without a license therefor, issued as provided in §§ 11–47–11, 11–47–12 and 11–47–18, carry a pistol or revolver in any vehicle or conveyance or on or about his person whether visible or concealed, except in his dwelling house or place of business or on land possessed by him or as provided in §§ 11–47–9 and 11–47–10, and no person shall manufacture, sell, purchase or possess a machine gun except as otherwise provided in this chapter. Every person violating the provision of this section shall, upon conviction, be punished by imprisonment for

not less than one (1) nor more than five (5) years and except for a first conviction under this section shall not be afforded the provisions of suspension or deferment of sentence nor of probation."

**7.** Rule 30 of Super. R. Crim. P. provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the request. At the same time copies of such request shall be furnished to adverse parties. If a defendant relies upon an affirmative *defense*, or justification, or matter in mitigation and wishes the

That rule specifically bars a party from assigning as error any portion of a charge or any omission thereupon unless he specifically directs the trial justice's attention to the matter to which he objects and gives the grounds for his objection. *State v. Pailin*, 114 R.I. 725, 731, 339 A.2d 253, 256 (1975); *State v. Crescenzo*, 114 R.I. 242, 258, 332 A.2d 421, 430–31 (1975).

■ We have said that it is incumbent upon trial counsel to direct the trial justice's attention to that portion of the charge, or the omission therefrom, which he finds objectionable and to state the grounds for his objection. *State v. Giordano*, R.I., 413 A.2d 93, 94 (1980); *State v. Crescenzo*, 114 R.I. at 258, 332 A.2d at 430. The objection must be lodged on the record before the jury retires to consider its verdict and must be sufficiently specific to bring into focus the precise nature of the alleged error. *State v. Hoyle*, R.I., 404 A.2d 69, 72 (1979).

■ In our view, the defendant's objection to the trial justice's charge was insufficient to satisfy the requirements of Rule 30. The failure of the defendant to object properly to the portion of the trial justice's charge concerning intent, on the grounds the defendant now alleges, precludes him from challenging the sufficiency of the charge on appeal. *State v. Giordano*, R.I., 413 A.2d at 94; *State v. Bowden*, 113 R.I. 649, 665, 324 A.2d 631, 641 (1974), *cert. denied sub nom.*, 419 U.S. 1109, 95 S.Ct. 782, 42 L.Ed.2d 805 (1975). Moreover, we note further that the defendant did not request that the trial justice give a supplemental charge to clarify the trial justice's definition of intent. If the defendant felt that there was a necessity for further instructions concerning the issue of intent, it was incumbent upon him to request that the trial justice give such further instructions. *See State v. Carraturo*, 112 R.I. 179, 191, 308 A.2d 828, 834 (1973); *State v. Amado*, 109 R.I. 53, 58, 280 A.2d 324, 327 (1971).

For the reasons discussed, the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers in this case may hereafter be returned to the Superior Court.

BEVILACQUA, C. J., and SHEA, J., did not participate.

court to instruct the jury with respect to such, he shall so advise the court in writing no later than at the close of the evidence. *No party may assign as error any portion of the charge or omission therefrom unless he ob-* *jects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.* Objections shall be made out of the presence of the jury." (Emphasis added.)