STATE

v.

Paul CALENDA.

No. 99–565–C.A.

Supreme Court of Rhode Island.

Jan. 8, 2002.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

John A. MacFadyen, C. O'Brien, Jr./Andrew A. Bucci, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

**PER CURIAM.**

This case came before the Court for oral argument on December 10, 2001, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

The defendant, Paul Calenda (defendant), is self-employed in the real estate and costume jewelry businesses. The defendant rented one of his approximately fifty apartment units to a former employee, Edwin Suarez (Suarez), and his live-in girlfriend, Veronica Suarez (Veronica). On February 24, 1996, defendant went to Suarez's apartment, at 1197 Westminster Street, to collect the rent. The facts from this point forward are heavily disputed.

Veronica testified that she answered the door at approximately 9:30 a.m. The defendant, accompanied by Joseph Benton (Benton), James Massarone (Massarone) and Francisco Torres (Torres), allegedly pushed Veronica aside and entered the apartment, despite her admonition that Suarez was not home. The defendant walked directly into the bedroom and demanded the rent from Suarez.[1] Veronica testified that when Suarez denied having any money, defendant became angry and began throwing their belongings on the floor. Because Suarez anticipated being beaten by the men, he threw the first punch, striking Torres. Suarez instructed Veronica to call the police, but when she picked up the phone, defendant pulled it out of the wall. During the scuffle, defendant pushed Veronica into a wall and allegedly told Benton to strike Suarez. When Benton apparently failed to hit Suarez hard enough, defendant picked up a small table and hit Suarez twice in the head. The defendant then ordered Benton to take Suarez's car keys and leave. It was

---

1. The amount of money Suarez owed defendant is in dispute. Suarez testified that he owed $500 in rent. However, defendant said Suarez was current and owed only $100 for the week.

Benton's understanding that they were going to take Suarez's car because he was delinquent on his rent payments. The plan was foiled, however, when Suarez jumped out of a second story window and, using a spare set of keys, beat them to his car and drove to the police station to report the incident.

Suarez returned to the police station four days later to file a written statement explaining that Benton had hit him during the altercation. Sometime after that statement was made, Benton encouraged Suarez to draft and sign an affidavit stating that Benton had merely been trying to break up the fight.[2] Suarez eventually went back to the police station to recant the affidavit.

The defendant's version of the incident on February 24, 1996, is strikingly different. The defendant testified that only Massarone accompanied him that morning to collect the rents. According to defendant, he and Massarone worked separately, starting at opposite ends of the second floor corridor of Suarez's apartment building. The defendant denied that he was also accompanied by Torres, alleging that he came "out of nowhere" and asked to borrow money before defendant knocked on Suarez's apartment door.

The defendant said that Veronica invited him into the apartment and that he walked toward the bedroom. Despite Torres's as-sertion that Benton emerged from another room to start the attack, defendant testified that Benton already was in the bedroom, arguing with Suarez.[3] The defendant testified that Suarez became angry when he requested the rent and struck Torres. A scuffle ensued. Massarone testified that he heard a commotion coming from Suarez's apartment and decided to investigate. Massarone stated that upon seeing the struggle, he grabbed defendant and suggested they leave. He testified that after exiting the apartment, they collected a few more rent payments and left the building. Although Massarone was the property manager for 1197 Westminster Street, he did not call the police because he "did not want to get involved." The defendant denied ordering anyone to take Suarez's keys.

In December 1997, after a jury trial, defendant was convicted of assault with a dangerous weapon, simple assault and battery and malicious destruction of property. A judgment of conviction was entered on March 2, 1998. The defendant received a ten-year suspended sentence for the charge of assault with a dangerous weapon and one year suspended for each of the other charges, with all sentences to run concurrently. The defendant filed a timely appeal on March 23, 1998.[4]

The defendant first argues that the trial justice erred by excluding relevant evi-

---

2.  Benton admitted that he persuaded Suarez to sign the affidavit because he was on life parole for a murder conviction and did not want to return to prison as a result of the incident.

3.  According to defendant, Benton repeatedly and angrily asked Suarez, "[w]here's my stuff?" It was defendant's theory that he walked into an illicit drug deal between Benton and Suarez on the morning of February 24, 1996.

4.  The notice of appeal was timely filed despite the fact that twenty-one days had passed since the entry of judgment. According to Article I, Rule 20(a) of the Supreme Court Rules of Appellate Procedure, when the twentieth day falls on a Sunday, the last day to file an appeal is the following Monday.

dence of both Suarez's drug use and defendant's lack of propensity for violence. We disagree.

It is well settled that "[t]he admission or exclusion of evidence on grounds of relevancy is within the sound discretion of the trial justice and, absent a showing of abuse of this discretion, this Court will not disturb a ruling concerning the admissibility of evidence." *McBurney Law Services, Inc. v. Apex, Inc.*, 771 A.2d 911, 911–12 (R.I.2001) (mem.) (citing *State v. Neri*, 593 A.2d 953 (R.I.1991)). Furthermore, "[a]n aggrieved party challenging the ruling of the trial justice additionally bears the burden of establishing that the excluded evidence was material and that its exclusion had an improper prejudicial influence on the factfinder." *Id.* (citing *Graff v. Motta*, 748 A.2d 249, 252 (R.I. 2000)). Finally, there is no abuse when "discretion has been soundly and judicially exercised * * * in the light of reason applied to all the facts with a view to the rights of all the parties to the action." *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 288 (R.I.1999) (quoting *Citrone v. SNJ Associates*, 682 A.2d 92, 95 (R.I.1996)).

The defendant argues that the trial justice abused his discretion by excluding evidence of Suarez's drug use during the day or night before the altercation. The trial justice ruled that such evidence had "no relevance to this case." The defendant contends that evidence of Suarez's past drug use supported his theory that he had walked in on an illicit drug deal between Benton and Suarez on the morning of February 24, 1996.

In the instant case, Suarez testified that he did not use drugs on the day of the altercation. The trial justice did not abuse his discretion in concluding that evidence of Suarez's drug use at any time other than the morning of the incident was irrelevant and unfairly prejudicial. For similar reasons, the trial justice precluded inquiry into Benton's drug use on previous occasions.

The defendant argues also that the trial justice abused his discretion by preventing any inquiry into whether defendant had ever used physical force in the past to collect the rents. The only issue before the court, however, was whether defendant used force on the day of the incident. Consequently, the trial justice did not abuse his discretion in concluding that the manner in which defendant had collected rent in the past was irrelevant to his collection on February 24, 1996.

The defendant next argues that the trial justice erred by admitting a computer printout of a tenant list (printout or document) as a business record, pursuant to Rule 803(6) of the Rhode Island Rules of Evidence, because it lacked adequate foundation. Specifically, defendant contends he was not the records custodian and could not testify that the document was made at or near the time of the incident.

According to Rule 801(a), (c) of the Rhode Island Rules of Evidence, a written assertion, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is hearsay. However, under the business records exception to the hearsay rule, a document is admissible if it is:

> "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, another person with

knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." R.I. R. Evid. 803(6).

Essentially, a person who is knowledgeable about the preparation of records and their use in the course of the business is capable of identifying them sufficiently to satisfy the prerequisite for their admission as business records. *See State v. Lemos*, 743 A.2d 558, 564 (R.I.2000).

At trial, the state introduced the printout, a document that Massarone had given to Providence Fire Department investigator, Joseph F. Dorsey (Dorsey), on March 18, 1996, following a fire at 1197 Westminster Street.[5] The printout was a computer-generated list of all the tenants residing at 1197 Westminster Street and the amount of rent owed by each tenant as of February 24, 1996.

The state called defendant to the stand to identify the document. The defendant confirmed that some of his tenants' records were on the computer. Further, he testified that these records listed the amount of rent owed by each tenant. He asserted, however, that his employee Diane Palmisciano (Palmisciano) made the entries on the computer. The defendant confirmed that the document said that the Suarezs' owed $535 in rent. Finally, al-

though defendant initially testified that he was unsure of where the document came from, he later agreed that it was "a record that [he kept] in the normal course of business for [his] business." The trial justice admitted the document as a full exhibit.

The trial justice did not err in admitting the printout as a business record. It is not necessary that the defendant be the custodian of the records to lay an adequate foundation. *See Lemos*, 743 A.2d at 564. Moreover, defendant acknowledged that such records were created and entered into the computer by one of his employees. Finally, defendant acknowledged that the printout at issue was a record kept in the normal course of his business.

Although no evidence was presented at the time of its admission to establish when the document was created, this failure was later cured. Massarone, defendant's property manager, later identified the document as coming from defendant's office. Moreover, Massarone acknowledged that he gave the printout to Dorsey on March 18, 1996. Consequently, the foundational requirements were met by a combination of defendant's and Massarone's testimony. Therefore, any error that may have resulted from an inadequate foundation was cured.

■ Furthermore, we note that there was no Rule 16 discovery violation. Rule 16 of the Superior Court Rules of Criminal Procedure requires the state to allow the defendant to inspect all documents intended for use as evidence that are "within the

---

**5.** The state first learned of the document after Dave Sherman, an official with the Bureau of Alcohol, Tobacco and Firearms (ATF), who had been watching the trial, approached the prosecutor and informed him of its existence.

Thus, the state had not produced the document in response to discovery requests, and defendant claims he was unfairly surprised by its admission.

possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State." In this case, the document was not in the state's possession until the day it was used. Further, the prosecutor, acting diligently, was unaware of its existence until he was informed by a third party.

Moreover, "[a] witness's testimony may be impeached by the admission of his or her prior statements that are inconsistent with the witness's in-court testimony—when a proper foundation has been made for the admission of the impeaching evidence." *State v. Robbio*, 526 A.2d 509, 513 (R.I.1987) (citing *State v. Cianci*, 430 A.2d 756, 762 (R.I.1981)). Specifically, a:

> "proper foundation is established when '[t]he witness's attention [is] * * * directed to the nature of the supposed statements and the circumstances under which they were made.' *Cianci*, 430 A.2d at 762. The trial justice must also determine whether the statement is in fact inconsistent with the witness's testimony and whether the inconsistency is in any way material to the issues involved in the case. *Id.* Whether the proper foundation has been laid is a question directed to the sound discretion of the trial justice. *Id.*" *Robbio*, 526 A.2d at 513.

In the instant case, defendant took the stand and testified that Suarez's rent payments were current. He was subsequently impeached on the stand with his own record. Thus, the trial justice did not err in allowing the document to be admitted.

Finally, defendant argues that the trial justice erred by denying him a continuance and by denying his motion to reopen the case. Specifically, defendant contends that these procedures were necessary to allow him to call Palmisciano, the employee who entered the records into the computer, to testify. We disagree.

"[I]t is within the sound discretion of the trial justice to determine whether to grant a motion to reopen." *State v. Austin*, 642 A.2d 673, 679 (R.I.1994). A trial justice's decision on a motion for a continuance will not be disturbed on appeal absent an abuse of discretion. *See State v. Bruyere*, 751 A.2d 1285, 1287 (R.I. 2000).

The defendant argues that the introduction of the printout, during cross-examination of his testimony, took him completely by surprise. He promptly asked for a continuance to investigate, but, the request was denied by the trial justice. Although the trial justice gave defendant a half hour morning recess to procure Palmisciano, defendant called Massarone to the stand instead.

The defendant rested his case after Massarone's testimony and the trial justice called for a lunchtime recess. Immediately after court reconvened, defendant made a motion to reopen his case, which was denied by the trial justice.

In denying defendant's motion to reopen, the trial justice stated:

> "[y]ou brought in, after [defendant] testified and expressed some doubt about a lot of things that appeared on what is now [the printout], full, you say now I feel I have to bring in another witness. You were going to bring in [Palmisciano] * * * [i]nstead of that, you brought in [ ] Massarone. You had an adequate opportunity to present anything that you wanted to present * * * through him. He was then extensively

cross-examined by [the prosecutor] where he gave specific testimony as to what he felt that sheet was all about * * *. Now you want to reopen and put him on to say other things other than what you've already put on. * * * I don't think it's proper subject for reopening at this time after he testified, whatever his rebuttal witness is."

The record reveals that the trial justice appropriately used his discretion to deny the defendant's motion to reopen. The trial justice determined that the defendant had simply made a tactical decision with regard to his case, which did not merit reopening.

Accordingly, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case are returned to the Superior Court.